UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re KAREN C. YOTIS, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| KAREN C. YOTIS, | ) | 18 C 5396 |
| | ) | |
| Appellant, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) | Appeal from: No. 16 B 30628 |
| | ) | |
| OXFORD BANK AND TRUST, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

Chapter 13 Debtor Karen Yotis appeals the bankruptcy court's order denying her motion to challenge Creditor Oxford Bank and Trust's request for post-petition attorney fees and expenses, as well as the court's denial of her motion for reconsideration. Docs. 1, 1-4, 1-5. The bankruptcy court's rulings are affirmed.

**Background**

This appeal arises out of a December 1993 mortgage loan that Yotis and her husband, William Yotis, received from Oxford. Doc. 6-4 at 121-127; Doc. 6-5 at 1-2. The Yotises borrowed $166,500 from Oxford, secured by a mortgage on their primary residence. Doc. 6-4 at 121-122, 124. The mortgage agreement provided that Oxford may "pay for whatever is necessary to protect the value of the Property and [Oxford's] rights in the Property," including "reasonable attorneys' fees," and that any such payments "become additional debt of [the Yotises] secured by" the mortgage. *Id*. at p. 126, § 7.

1

In June 1999, William filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. *In re Yotis*, No. 99 B 19500 (Bankr. N.D. Ill.), Dkt. 1. William received a discharge of his debts with the exception of his mortgage debt to Oxford, which survived because he and Oxford entered into a reaffirmation agreement. *Id*., Dkts. 5, 7.

In August 2010, Yotis filed a voluntary Chapter 7 petition, which led to a discharge of her debts. *In re Yotis*, No. 10 B 35161 (Bankr. N.D. Ill.), Dkts. 1, 42. The discharge extinguished Yotis's personal liability to Oxford, but Oxford retained its lien against the Yotises' residence. Doc. 8 at 8; Doc. 14 at 8-9.

In June 2012, Oxford brought a foreclosure suit against the Yotises in state court. *Oxford Bank & Tr. v. Yotis*, No. 12 CH 21326 (Cook Cnty. Cir. Ct.). In October 2013, the court entered a judgment of foreclosure and sale as to the Yotises' residence. Doc. 6-15 at 5-13.

In January 2014, before the foreclosure sale could be held, William filed a voluntary Chapter 13 petition. *In re Yotis*, No. 14 B 2689 (Bankr. N.D. Ill.), Dkt. 1; *id*., Dkt. 293 at 1 (reported at 2016 WL 502006 (Bankr. N.D. Ill. Feb. 4, 2016)) (recounting the petition's timing). In August 2016, the bankruptcy court dismissed the petition because William failed to make required payments. *Id*., Dkt. 305. After the Chapter 13 trustee submitted a final report, the court closed the case on September 21, 2016. *Id*., Dkts. 310, 311.

Oxford scheduled the foreclosure sale for September 28, 2016. Doc. 6-5 at 9-10. On September 26, 2016—five days after William's Chapter 13 case was closed, and two days before the scheduled sale—Yotis filed a voluntary Chapter 13 petition, initiating this case. Doc. 6-4 at 13-19. Yotis's petition represents that she owes a debt to Oxford secured by her residence, and she checked the box indicating that both jointly filing spouses owed the debt, even though she

2

did not file the bankruptcy petition jointly with William and was no longer personally liable for the mortgage debt. *Id*. at 13, 20-21.

Oxford moved to dismiss Yotis's petition, arguing that she filed it in bad faith and that her proposed plan was not a good faith attempt to reorganize her debts. *Id*. at 100-114. Specifically, Oxford contended that the totality of the circumstances, including the Yotises' repeated bankruptcy filings and the timing of those filings, demonstrated that Yotis's latest petition was the latest of "a series of improper attempts to stop pending foreclosure sales and avoid paying" the mortgage debt. *Id*. at 100-102, 107-113. The bankruptcy court held three evidentiary hearings on Oxford's motion in early 2017. Doc. 13 at 3-4, 79-80, 116-118. The court expressed skepticism as to Yotis's proof of her income and twice granted her continuances to obtain additional documentation. *Id*. at 71-75, 88-89, 95-96, 103. The court ultimately denied Oxford's motion to dismiss after Yotis produced that documentation. *Id*. at 250-251.

In addition to moving to dismiss Yotis's petition, Oxford filed a proof of claim, defended against her objection to that claim, and objected to her proposed plan. Doc. 6-15 at 20-30. Yotis ultimately withdrew her objection to Oxford's claim, Doc. 6-4 at 7-8; *In re Yotis*, No. 16 B 30628 (Bankr. N.D. Ill.), Dkt. 78, and the bankruptcy court confirmed her plan, Doc. 6-10 at 24.

On March 16, 2017, Oxford filed a Bankruptcy Rule 3002.1(c) notice itemizing $32,273.86 in attorney fees and expenses that it contended were incurred in connection with Yotis's Chapter 13 case and thus recoverable under the mortgage agreement's fee-shifting provision. Doc. 6-15 at 20-31. On March 16, 2018, Yotis timely moved under Rule 3002.1(e) for a determination as to whether payment of Oxford's fees and expenses was "required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with [11 U.S.C.] § 1322(b)(5)." Doc. 6-10 at 25-38 (quoting Fed. R. Bankr.

3

P. 3002.1(e)).  The only specific argument she developed in the bankruptcy court was that Oxford filed its motion to dismiss in bad faith and without a sufficient legal and factual basis, rendering unreasonable any fees and expenses associated with that motion.  *Id*. at 32-38.

The bankruptcy court denied Yotis's motion.  Doc. 7 at 71-73; Doc. 1-4.  The court explained that because "[t]his was [Yotis's] second [bankruptcy] case" and because Oxford was "skeptical of the [Yotises]" given their serial bankruptcy filings, it was "entitled to make [its] motion to dismiss."  Doc. 7 at 71-72.  The court recalled that it "had a devil of time getting records to support … [Yotis's] asserted income," and that it ultimately denied Oxford's motion to dismiss "[b]ecause of [the court's] lenience in delaying the end of [the] evidentiary hearing so that [Yotis] finally came in with records that seemed to substantiate and did substantiate the income."  *Id*. at 72.  The court observed that although Oxford arguably "put too much gas on the accelerator of litigation" and made "the case cost too much," the only specific fees and expenses that Yotis challenged were those associated with Oxford's motion to dismiss, which, according to the court, were reasonably incurred.  *Id*. at 72-73.  Accordingly, the court declined to reduce Oxford's claimed fees and expenses.  *Id*. at 73.

Yotis moved for reconsideration under Bankruptcy Rule 9023.  Doc. 6-14 at 70-85.  The court denied the motion, reasoning that because Yotis did not bring a transcript of the earlier hearing, she failed to show that the court had made a mistake of law or fact.  Doc. 7 at 79; Doc. 1-5.  Yotis timely appealed.  Doc. 1.

## Discussion

I. **Bankruptcy Court Order Denying Yotis's Motion Challenging Oxford's Post-Petition Fees and Expenses**

Bankruptcy Rule 3002.1 sets out the procedure for adjudicating a secured creditor's claim for post-petition fees and expenses.  Fed. R. Bankr. P. 3002.1.  Rule 3002.1(c) requires the

4

creditor to file "a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with [its] claim after the bankruptcy case was filed, and (2) that [it] asserts are recoverable against the debtor or against the debtor's principal residence." Fed. R. Bankr. P. 3002.1(c). Rule 3002.1(e) then permits any "party in interest" to contest the creditor's claimed fees and expenses. Fed. R. Bankr. P. 3002.1(e). If a party in interest does so, the bankruptcy court "shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with [11 U.S.C.] § 1322(b)(5)." *Ibid.*; *see also* 11 U.S.C. § 1322(b)(5) (providing that a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any … secured claim on which the last payment is due after the date on which the final payment under the plan is due"); *Trudelle v. PHH Mortg. Corp.*, 2017 WL 4411004, at *2-3 (Bankr. S.D. Ga. Sept. 29, 2017) (outlining the procedure for secured creditor fee notices under Rule 3002.1).

As noted, the mortgage agreement provides that Oxford may "pay for whatever is necessary to protect the value of the Property and [Oxford's] rights in the Property," including "reasonable attorneys' fees," and that any such payments "become additional debt of [the Yotises] secured by" the mortgage. Doc. 6-4 at p. 126, § 7. Yotis contends that the bankruptcy court erred in rejecting her argument that Oxford's claimed attorney fees were unreasonable because they were largely attributable to an unsuccessful motion to dismiss that, she submits, Oxford lacked a proper basis to file. Doc. 8 at 20-27. (To the extent Yotis also means to argue that Oxford's claimed fees and expenses were unnecessary to protect its rights or the property's value, *id.* at 22, the argument is forfeited because Yotis failed to raise it before the bankruptcy court and because she fails on appeal to develop it or cite any supporting authority. *See In re*

5

*Lisse*, 921 F.3d 629, 640-41 (7th Cir. 2019) (holding that arguments raised for the first time on appeal are forfeited); *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.*, 882 F.3d 692, 705 (7th Cir. 2018) ("This is a civil rather than a criminal case, which means that we typically will not entertain an argument raised for the first time on appeal, even for the limited purpose of ascertaining whether a plain error occurred."); *M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").)

  This court reviews for abuse of discretion the bankruptcy court's ruling that Oxford's claimed attorney fees were reasonable. *See Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013) (reviewing for abuse of discretion the district court's decision regarding the reasonableness of attorney fees sought under a contractual fee-shifting provision); *Matthews v. Wis. Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011) (same); *Holber v. Suffolk Constr. Co.*, 642 F. App'x 110, 114 (3d Cir. 2016) (same, in a bankruptcy appeal); *see also Cintas Corp. v. Perry*, 517 F.3d 459, 470 (7th Cir. 2008) (explaining, in a contractual fee-shifting case, that the abuse of discretion standard applies because "[t]he district court is in a superior position to observe the work of the attorneys and appraise the appropriate value of their services") (alteration and internal quotation marks omitted); *In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998) ("Because [attorney] fee determinations under [11 U.S.C. § 329] rest within the sound discretion of the bankruptcy court, we will disturb an order requiring the return of an excessive fee only upon finding that the bankruptcy court abused its discretion."); *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994) (similar). The court will find an abuse of discretion only if it is "convinced that no reasonable person could agree with the bankruptcy court." *Geraci*, 138 F.3d at 319; *see also Seventh Ave., Inc. v. Shaf Int'l, Inc.*, 909 F.3d 878, 880

(7th Cir. 2018) ("Abuse of discretion is a highly deferential standard of review and we will conclude an abuse occurred only when no reasonable person could take the view adopted by the trial court.") (internal quotation marks omitted).

The bankruptcy court did not abuse its discretion in holding that Oxford's motion to dismiss was reasonable and therefore in rejecting Yotis's sole articulated challenge to Oxford's claimed fees and expenses. The bankruptcy court held that Oxford was "entitled to make [its] motion to dismiss" because "[t]his was [Yotis's] second [bankruptcy] case" and Oxford was reasonably "skeptical of the [Yotises]" given their serial bankruptcy filings. Doc. 7 at 71-72. The court further explained that it ultimately denied Oxford's motion to dismiss "because of [its] lenience in delaying the end of [the] evidentiary hearing so that [Yotis] finally came in with records that … substantiate[d] the income." *Id*. at 72. Put another way, had the bankruptcy court ruled at the initial hearing on Oxford's motion to dismiss instead of giving Yotis extra time to submit evidence, it may well have granted the motion.

Yotis argues that Oxford acted unreasonably in moving to dismiss because it "provided no … facts" suggesting that she had filed her Chapter 13 petition in bad faith, and that it "relied instead on misleading arguments devoid of even a cursory explanation that the facts of the case would lead to a conclusion that the petition and plan lack good faith." Doc. 8 at 22-23. Specifically, Yotis contends that: (1) Oxford argued incorrectly that she "could not properly propose to pay in a Chapter 13 [plan] a debt for which she no longer has personal liability"; and (2) Oxford pointed to the timing of her petition as evidence of bad faith, even though a petition timed "to stop a foreclosure sale in order to resume and continue the substantial payments made during William's case … does not, per se, support an argument of bad faith." *Id*. at 23. Oxford responds that its motion was reasonable because it had ample basis to believe that Yotis filed her

7

petition to delay the impending foreclosure sale rather than in a good faith attempt to reorganize her debts. Doc. 14 at 28-34. Oxford contends that Yotis's lack of personal liability for the mortgage debt, while not a bar to her referencing the debt in a Chapter 13 plan, is still a relevant consideration in the good faith analysis. *Id*. at 33-34. And Oxford argues that its concerns were based on more than just the timing of Yotis's petition, observing that "the Yotises had filed three previous bankruptcies" and their "tactics had … frustrated Oxford's collection efforts for over six years and delayed the Foreclosure Action for over four years," and explaining that "courts have often viewed the serial filing of bankruptcy cases by a debtor and her spouse as a sign of bad faith." *Id*. at 29-32.

Yotis's reply brief on appeal does not address Oxford's responses, thereby forfeiting any retorts she might have had. *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his reply brief."). Instead, Yotis's reply brief contends for the first time on appeal that Oxford's bankruptcy court reply brief made other arguments that were meritless and that misstated the facts. Doc. 15 at 13. Yotis has forfeited that contention by failing to raise it until her reply brief, *see Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue."), and by failing to cite anything in the record to support her assertion that Oxford misstated the facts, *see M.G. Skinner*, 845 F.3d at 321.

Even setting aside forfeiture, Yotis is wrong on the merits. The question underlying Oxford's motion to dismiss—whether Yotis filed her Chapter 13 petition in good faith—is a

totality of the circumstances inquiry focused on "fundamental fairness" to creditors like Oxford. *In re Love*, 957 F.2d 1350, 1356-57 (7th Cir. 1992). Relevant factors to the good faith inquiry include "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id*. at 1357.

Under that framework, the bankruptcy court reasonably held that the totality of the circumstances gave Oxford a reasonable basis for moving to dismiss. As to "the timing of [Yotis's] petition," *ibid*., "close temporal proximity between a debt coming due and a bankruptcy filing" may indicate bad faith, *In re Smith*, 286 F.3d 461, 465 n.2 (7th Cir. 2002). That principle applies here, as Yotis filed her Chapter 13 petition two days before the scheduled foreclosure sale was to take place. Moreover, the serial filing of bankruptcy petitions either by the same debtor under different chapters or by a debtor and her spouse—or, as here, both—provides another indication of bad faith. *See Johnson v. Home State Bank*, 501 U.S. 78, 87-88 (1991) ("A bankruptcy court is authorized to confirm a plan only if the court finds, *inter alia*, that 'the plan has been proposed in good faith' … . [This] provision[] may be implicated when a debtor files serially under Chapter 7 and Chapter 13.") (quoting 11 U.S.C. § 1325(a)(3)); *Smith*, 286 F.3d at 465 n.2 ("[S]erial bankruptcy filings may indicate bad faith."); *Jeffries v. GE Capital Mortg. Servs., Inc.*, 1995 WL 12288, at *2 (N.D. Ill. Jan. 11, 1995) (affirming the bankruptcy court's dismissal of the Chapter 13 petition on bad faith grounds, reasoning that "[t]he [debtor] and his wife have used the serial filing of Chapter 13 petitions as a vehicle for delay"). Thus, given the serial nature of the Yotises' bankruptcy filings and the timing of Yotis's latest petition—filed on

9

the heels of the closure of William's Chapter 13 case and two days before the scheduled foreclosure sale—it was not unreasonable for the bankruptcy court to find that Oxford had a reasonable basis for moving to dismiss Yotis's Chapter 13 petition. The bankruptcy court therefore did not abuse its discretion in rejecting Yotis's argument to the contrary. *See Seventh Ave.*, 909 F.3d at 880; *Geraci*, 138 F.3d at 319.

In so holding, the court acknowledges that Oxford's motion to dismiss incorrectly argued that Yotis's lack of personal liability for the mortgage debt made it improper for her to list that debt in her Chapter 13 petition. *See Johnson*, 501 U.S. at 80 (holding that "a debtor can include a mortgage lien in a Chapter 13 bankruptcy reorganization plan" even after "the personal obligation secured by the mortgaged property has been discharged in a Chapter 7 proceeding"). But the fact that Yotis's personal liability for the debt had already been discharged in her Chapter 7 case was potentially relevant to whether she proposed her Chapter 13 plan in good faith, *see id*. at 87-88, which was certainly relevant to Oxford's bottom line request that her Chapter 13 petition be dismissed, *see Lisse*, 921 F.3d at 639 ("A bankruptcy court may dismiss a Chapter 13 petition for cause if it finds the petition was filed in bad faith.") (citing 11 U.S.C. § 1307(c)); *Love*, 957 F.2d at 1350 (same).

That leaves Yotis's argument that the timing of her Chapter 13 petition did not necessarily mean it was made in bad faith. That argument fails because it rests on the incorrect premise that Oxford "provided no … facts" supporting its charge of bad faith other than the timing of her petition. Doc. 8 at 23. As noted, Oxford raised concerns not just with the timing of her petition but also with the Yotises' serial bankruptcy filings, which together permitted the bankruptcy court to conclude that Oxford acted reasonably in moving to dismiss. Doc. 6-4 at 100-102, 107-113.

10

To the extent Yotis also argues that Oxford cannot recover attorney fees associated with its motion to dismiss because the bankruptcy court denied the motion, Doc. 8 at 27, she is wrong. The mortgage agreement's fee-shifting provision does not contain a prevailing party requirement, and the bankruptcy court therefore did not abuse its discretion in concluding that the fees Oxford incurred in pursuing the motion were reasonable even though the motion was unsuccessful. *See Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010) (holding that, where the parties' contract provided for the payment of reasonable attorney fees for any claim arising out of the contract and "not just those claims on which [a party] prevails," a party need not have prevailed on a claim to recover its fees, reasoning that "Illinois law is clear that 'when a contract calls for the shifting of attorney fees, a trial court should award all reasonable fees'") (alteration omitted) (quoting *J.B. Esker & Sons, Inc. v. Cle-Pa's P'Ship*, 757 N.E.2d 1271, 1277 (Ill. App. 2001)); *3432 W. Henderson Bldg., LLC v. Gizynski*, 81 N.E.3d 94, 101 (Ill. App. 2017) (holding that the lender was entitled to recover reasonable attorney fees incurred in an unsuccessful foreclosure suit because "neither the note nor mortgage require[d] a legal action to be successful and completed for the lender … to recover" its fees) (alteration and internal quotation marks omitted).

Yotis does not advance any other ground for finding that Oxford's attorney fees related to the motion to dismiss were unreasonable, nor does she challenge any other aspect of its claimed fees and expenses. She thus has forfeited any such challenges. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … .").

Finally, Yotis argues that although her motion challenging Oxford's claimed fees and expenses was "not a motion for sanctions," the bankruptcy court should have disallowed some or all of those fees and expenses as a sanction under Bankruptcy Rule 3001(c)(2)(D). Doc. 8 at 28. Rule 3001(c)(2)(D) provides that if a creditor submits a proof of claim but "fails to provide any information required by [Rule 3001(c)], the [bankruptcy] court may, after notice and hearing, … (i) preclude the [creditor] from presenting the omitted information … as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3001(c)(2)(D). Although Yotis asserts that "Oxford failed to file the required additional information with its" proof of claim, she does not explain or cite any authority for the proposition that the bankruptcy court was authorized—much less required—to sanction Oxford's alleged omission by disallowing its requested fees or expenses. Doc. 8 at 28. She has therefore forfeited the point. *See M.G. Skinner*, 845 F.3d at 321.

## II.    Bankruptcy Court Order Denying Yotis's Motion for Reconsideration

Yotis brought her motion for reconsideration under Bankruptcy Rule 9023, which incorporates Civil Rule 59. Fed. R. Bankr. P. 9023. The bankruptcy court's denial of Yotis's Rule 9023 motion is reviewed for abuse of discretion. *See In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

Although Yotis purports to appeal the bankruptcy court's denial of reconsideration, Doc. 1 at 1, she does not address that ruling in her appeal brief other than to make the barebones and unsupported assertion that "denying the motion for the determination, and the motion to alter or amend, was an abuse of discretion," Doc. 8 at 29. Her challenge to the order denying reconsideration therefore is forfeited. *See M.G. Skinner*, 845 F.3d at 321. In any event, because

12

the bankruptcy court did not abuse its discretion in denying Yotis's Rule 3002.1(e) motion in the first place, and because her reconsideration motion largely recycled her original arguments without explaining where the bankruptcy court had gone wrong, Doc. 6-14 at 70-85, it was not an abuse of discretion for the bankruptcy court to deny reconsideration. *See Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1082 (7th Cir. 2018) (holding that where the district court's original decision was not an abuse of discretion, "it had even greater discretion not to reconsider [its] ruling, especially without a coherent argument that it had erred legally or factually"); *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 204 F.3d 736, 743 (7th Cir. 2000) ("Rule 59(e) allows a court to correct its own error. Since the judge was not wrong on the merits, he had nothing to correct.").

## Conclusion

The bankruptcy court's order denying Yotis's motion to challenge Oxford's claimed post-petition attorney fees and expenses is affirmed, as is the bankruptcy court's order denying Yotis's motion for reconsideration.

May 22, 2019

_____
United States District Judge